1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTOPHER BROWN, SCOTT GRAEBER, LAURA LOES, LETICIA SHAW, and DAVID ATWOOD, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC,<br><br>Defendant. | CASE NO. 2:22-cv-00965-JHC<br><br>ORDER RE: DEFENDANT'S MOTION TO DISMISS |

## I

### INTRODUCTION

This antitrust matter comes before the Court on Defendant's Motion to Dismiss. Dkt. # 18. The Court has reviewed the materials filed in support of and in opposition to the motion, pertinent portions of the record, and the applicable law. The Court finds that oral argument is unnecessary. Being fully advised, the Court DENIES the motion.

## II

### BACKGROUND

According to Plaintiffs: Defendant Amazon, Inc. is the largest retailer in the United States and operates Amazon Marketplace, the largest electronic commerce marketplace in the world. Dkt. # 1 at 16. The company operates as an online retailer, selling about 12 million

ORDER RE: DEFENDANT'S MOTION TO DISMISS - 1

products to consumers as a first-party seller and about 350 million products as an online platform for third-party sellers. *Id.* at 41. Plaintiffs are residents of California and Maryland who purchased goods from Amazon on Amazon Marketplace. *Id.* at 14-16.

Plaintiffs challenge Amazon's use of minimum margin agreements (MMAs) that the company enters into with its suppliers. *Id.* at 4. The MMAs require suppliers to guarantee Amazon's ability to price products at a competitive price point at least 95% of the time and the company's receipt of a minimum margin on each sale regardless of the sale price. *Id.* at 5. Plaintiffs allege that the MMAs have enabled Amazon to acquire or maintain the power to control online prices of millions of products it sells online. *Id.* at 9. Plaintiffs claim the MMAs violate Section 1 of the Sherman Act, the California Cartwright Act, and the Maryland Antitrust Act by setting a de facto minimum retail price for products, resulting in restraint of competition by Amazon's rivals and development of supracompetitive prices.[1] *Id.* at 4-5. Plaintiffs also claim that Amazon's enforcement of the MMAs is an abuse of monopoly power under Section 2 of the Sherman Act. *Id.* at 9.

Plaintiffs filed this putative class action on July 13, 2022. Dkt. # 1. They bring four causes of action: (1) a claim under 15 U.S.C. § 1 (Section One of the Sherman Act) (2) a claim under 15 U.S.C. § 2 (Section Two of the Sherman Act); (3) a claim under Cal. Bus. & Prof. Code § 16700, *et seq.* (California's Cartwright Act) on behalf of the California class; and (4) a claim under Md. Code Ann., Com. Law § 11-201, *et seq.* (Maryland's Antitrust Act) on behalf of the Maryland class. *Id.* at 50-54.

---

[1] Supracompetitive prices are rates higher than what would be found in a competitive market. *See Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 984 (9th Cir. 2023) ("A supracompetitive price is simply a 'price[] above competitive levels.'") (quoting *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995)).

ORDER RE: DEFENDANT'S MOTION TO DISMISS - 2

Amazon moves to dismiss the complaint for (1) lack of antitrust standing; (2) failure to state a Sherman Act Section One or Two claim under Federal Rule of Civil Procedure 12(b)(6); and (3) failure to state a California or Maryland state law claim under Rule 12(b)(6).  Dkt. # 18 at 8-10.

### III

#### DISCUSSION

Amazon moves to dismiss Plaintiffs' claims on various grounds, saying: (1) Plaintiffs lack antitrust standing because they (a) have not suffered an "antitrust injury" in the relevant market and (b) are not "efficient enforcers" of antitrust laws; (2) Plaintiffs challenge conduct that cannot give rise to antitrust liability; (3) assuming Plaintiffs have standing, they fail to state a Section 1 claim under the "quick-look" framework; (4) Plaintiffs fail to plausibly allege anticompetitive effects; (5) Plaintiffs fail to allege a relevant antitrust market; and (6) the state law antitrust claims fail for the same reasons as the federal claims.  Dkt. # 18 at 8-10.

A.   Plaintiffs Have Adequately Pleaded Antitrust Standing

Amazon says that the Sherman Act claims must be dismissed because Plaintiffs lack antitrust standing; it says that Plaintiffs "(1) have not suffered an 'antitrust injury' in the relevant market" and "(2) are not 'efficient enforcers' of the antitrust laws." Dkt. # 18 at 8, 14.

Section 4 of the Clayton Act permits suit for recovery of damages by "any person […] injured in [their] business or property by reason of anything forbidden in the antitrust laws[.]" 15 U.S.C. § 15(a).  This provision could be read quite broadly as affording "relief to all persons whose injuries are causally related to an antitrust violation."  *Amarel v. Connell*, 102 F.3d 1494, 1507 (9th Cir. 1996) (quoting *Lucas v. Bechtel Corp.*, 800 F.2d 839, 843 (9th Cir. 1986)).  But the United States Supreme Court determined that Congress did not intend Section 4 to wield

such breadth.  *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*").  As a result, the Supreme Court developed "antitrust standing" as a requirement distinct from Article III standing.  *See Id.*  In *AGC*, the Supreme Court identified five factors to analyze when determining whether a plaintiff has antitrust standing.  *See Am. Ad. Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 (9th Cir. 1999).  These factors include "(1) the nature of the plaintiff's alleged injury; that is, whether it was the type [of injury] the antitrust laws were intended to forestall [i.e., anti-trust injury]; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages."  *Id.* (citations omitted); *see also City of Oakland v. Oakland Raiders*, 20 F.4th 441, 455 (9th Cir. 2021).  While no single factor is dispositive of antitrust standing, the Supreme Court established that "'[a] showing of antitrust injury is necessary, but not always sufficient, to establish standing under § 4.'"  *Am. Ad. Mgmt., Inc.*, 190 F.3d at 1055 (quoting *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 n.5 (1986)).  Apparently, Amazon's claim that Plaintiffs have not suffered an "antitrust injury" refers to *AGC* factor (1) and Amazon's claim that Plaintiffs are not "efficient enforcers" of the antitrust laws refer to *AGC* factors (2) through (5).  *See* Dkt. # 18 at 7-8, 8-10.

      1.     Plaintiffs have adequately pleaded antitrust injury

      To properly plead antitrust injury, a plaintiff must allege: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent."  *Am. Ad. Mgmt., Inc.*, 190 F.3d at 1055; *City of Oakland*, 20 F.4th at 455.  Amazon raises no concerns about the first three requirements.  Dkt. # 18 at 14-15.  As to the fourth, however, Amazon contends that Plaintiffs' alleged injury is experienced in a market separate from the market in which the allegedly

unlawful conduct occurs. *Id.* (citing *F.T.C. v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) and *Am. Ad Mgmt., Inc.*, 190 F.3d 1051).  Amazon says that Plaintiffs' claims of the MMAs causing buyers to pay higher prices for products occurs in the Online Retail Marketplace Market, whereas the Minimum Margin Agreements operate in the wholesale market.  *Id.*; Dkt. # 38 at 7-9.

Plaintiffs counter persuasively that Amazon "conflates the locus of the conspiratorial conduct with the market in which the restraint operates."  Dkt. # 25 at 11.  They contend that because they "incurred overcharges in the same retail markets [ ] that Amazon's MMAs restrained, Plaintiffs have standing to sue for those injuries."  *Id.* at 13.

The United States Supreme Court has emphasized that the "'central interest [of the Sherman Act] [is] protecting the economic freedom of participants in the relevant market.'"  *Am. Ad. Mgmt., Inc.*, 190 F.3d at 1057 (quoting *Associated Gen. Contractors of Cal., Inc.*, 459 U.S. at 538).  Distilling this principle, the Ninth Circuit requires that the "'injured party be a participant in the same market as the alleged malefactors.'"  *Am. Ad. Mgmt., Inc.*, 190 F.3d at 1057 (quoting *Bhan v. NME Hosps, Inc.*, 772 F.2d 1467, 1470 (9th Cir. 1985)); *see also Eagle v. Star-Kist Foods, Inc.* 812 F.2d 538, 540 (9th Cir. 1987) ("the part alleging the injury must be either a consumer of the alleged violator's goods or services or a competitor of the alleged violate in the restrained market").

Plaintiffs allege that the "relevant market" is the two-sided Online Retail Marketplace Market or, alternatively, the online retail sales market and product submarkets.  Dkt. # 1 at 10, 28-38, 46-47.  As discussed below in part III.C.1, Plaintiffs allege plausible relevant markets within which the allegedly unlawful conduct occurred.

2.     Plaintiffs allege they are direct purchasers

Amazon also says that Plaintiffs lack standing because they are not "efficient enforcers" of antitrust laws.  Dkt. # 18 at 8, 15-17.  It claims that Plaintiffs' "alleged injury is not proximately caused by the alleged anticompetitive conduct[.]"  *Id.* at 8.  Instead, Amazon contends, Plaintiffs' injury only occurs "after multiple independent pricing decisions by suppliers and rival retailers."  Dkt. # 38 at 10.  Therefore, it says, because Plaintiffs are not injured at the "first step" of the causal chain, the injury is not sufficiently direct.  Dkt. # 18 at 16-17 (citing *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th 127, 134-35 (2d Cir. 2021)).

Antitrust laws are intended "to preserve competition for the benefit of consumers."  *Am. Ad. Mgmt., Inc.*, 190 F.3d at 1055.  But consumer status alone does not guarantee standing.  The Supreme Court in *Illinois Brick Co. v. Illinois* "preclude[d] 'indirect purchasers in a chain of distribution … from suing for damages based on unlawful overcharges passed on to them by intermediaries in the distribution chain who purchased directly from the alleged antitrust violator.'"  *Frame-Wilson v. Amazon.com, Inc.*, 591 F. Supp. 3d 975, 983-84 (W.D. Wash. 2022) (quoting *State of Ariz. v. Shamrock Foods Co.*, 729 F.2d 1208, 1211-12 (9th Cir. 1984)).  In essence, the "overcharged direct purchaser" is the party injured for antitrust purposes.  *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 729 (1977).

The Supreme Court clarified *Illinois Brick* in *Apple Inc. v. Pepper* by explaining that "indirect purchasers who are two or more steps removed from the antitrust violator in a distribution chain may not sue."  139 S. Ct. 1514, 1521 (2019).  There, the Court held that "direct purchasers—that is, those who are 'the immediate buyers from the alleged antitrust violators'— may sue."  *Id.* (quoting *Kan. v. UtiliCorp United, Inc.*, 497 U.S. 199, 207 (1990)).  In that case, a class of consumers brought antitrust claims against Apple for its contracts with independent app developers.  *Id.* at 1519.  The contracts enabled Apple to keep 30% of sales from apps sold in the

"App store," no matter the sales prices set by the app developers. *Id.* These contracts allegedly caused consumers to pay supracompetitive prices for independently developed apps sold on the Apple App Store. *Id.* The consumers alleged that the app developers would increase the sale price of Apps sold in the app store to account for the mandatory profit margin. *Id.* They alleged that, as a result, the apps that the class members purchased "directly from the retailer Apple, who is the alleged antitrust violator" were purchased at supracompetitive prices, with the overcharge passed on to the class members. *Id.* at 1521. The Supreme Court highlighted that the lack of an intermediary in the distribution chain is dispositive. *Id.* When a plaintiff is the "immediate buyer[] from the alleged antitrust violator" they may sue. *Id.*

Plaintiffs say they are direct purchasers from an alleged antitrust violator. Dkt. # 25 at 5. They contend that Amazon's characterization of Plaintiffs' allegedly remote relationship to the anticompetitive conduct "merely depict[s] the sequence of events that would occur if suppliers *fail to enforce* the MMAs' minimum resale prices." *Id.* at 7. Plaintiffs contend that Amazon's intent in designing its MMAs was to "prevent discounts from occurring in the first place." *Id.* And, if Amazon's MMAs work as intended, "suppliers avoid paying a penalty to Amazon by preventing other retailers from offering lower prices." *Id.* at 8. In their complaint, Plaintiffs allege that they have purchased products directly from Amazon that were at supracompetitive prices because of the MMAs. Dkt. # 1 at 4-7, 14-17, 19-28, 38-40. The Court agrees with Plaintiffs that by purchasing products allegedly affected by the MMAs at supracompetitive prices *directly from Amazon*, they maintain direct purchaser standing as illustrated by the Supreme Court in *Illinois Brick Co.*, 431 U.S. Dkt. # 25 at 7-8 (also citing *Apple Inc.*, 139 S. Ct. at 1519-20). Plaintiffs' alleged injuries are sufficiently direct to satisfy *Illinois Brick*.

1

2

Because Plaintiffs have adequately pleaded antitrust injury and direct injury, they have standing to pursue their Sherman Act claims.

3

4

B.        The Challenged Conduct Gives Rise to Antitrust Liability

5

6

Under Rule 12(b)(6), Amazon moves to dismiss Plaintiffs' Sherman Act Section One and Section Two claims as well as their California and Maryland state law claims.  Dkt. # 18 at 9-10.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

A defendant may move to dismiss a claim under Rule 12(b)(6) when a pleading "fails to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), courts construe the complaint in the light most favorable to the nonmoving party.  *Livid Holdings Ltd. V. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  Courts must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff.  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  But courts are not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 677-78.

22

23

24

Amazon says that Plaintiffs challenge conduct that cannot give rise to antitrust liability.  Dkt. # 18 at 9.  It says that the MMAs are "lawful and procompetitive price negotiations," and Amazon is "free to choose the terms on which it deals with its suppliers."  Dkt. # 18 at 18-20.

Amazon contends that antitrust laws do not prohibit the MMAs as the agreements are a means of "negotiating for lower prices." *Id.* at 18 (citing *Atl. Richfield Co. v. USA Petrol. Co.*, 495 U.S. 328, 338, 340 (1990)). Amazon also claims that the MMAs are "*per se* lawful because 'as a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing.' *Pac. Bell Tel. Co. v. linkLine Comm'cns, Inc.*, 555 U.S. 438, 448 (2009)." *Id.* at 20. These arguments do not persuade the Court.

First, Amazon's procompetitive justifications of MMAs may be used to rebut Plaintiffs' claims once a prima facie case has been established, but the Court need not consider Amazon's justifications on a motion to dismiss. *See Frame-Wilson*, 591 F. Supp. 3d at 992; *see also Qualcomm Inc.*, 969 F.3d at 991 (describing burden shifting frameworks under sections 1 and 2 of the Sherman Act).

Second, in holding that vertical price restraints[2] establishing minimum resale prices should be generally analyzed under the "rule of reason" standard rather than a per se one, the United States Supreme Court considered the possible procompetitive and anticompetitive effects of such agreements. *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 890-94 (2007). On the one hand, the Supreme Court said, these agreements can stimulate and increase inter-brand competition. *Id.* at 890-93. On the other, these agreements can produce anticompetitive effects. *Id.* at 893. The Supreme Court highlighted the possibility that powerful retailers may abuse resale price maintenance to "forestall innovation in distribution that decreases costs." *Id.* at 893-94. The Supreme Court also explained that "[t]he source of the restraint may also be an important consideration. If there is evidence that retailers were the

---

[2] Vertical restraints are restraints "imposed by agreement between firms at different levels of distribution." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018).

impetus for a vertical price restraint, there is a greater likelihood that the restraint […] supports a dominant, inefficient retailer." *Id.* at 897-98.

Plaintiffs allege that Amazon's MMAs "prevent other online retailers from offering the same product Amazon sells at a lower price" because the suppliers incorporate the guaranteed return into the minimum resale price to Amazon's competitors. Dkt. # 1 at 4-8, 12, 17. Plaintiffs allege that if the suppliers do not adopt the guaranteed return into their resale price, they are still stuck paying the minimum margin guarantee to Amazon. *Id.* at 5-7, 17.

Plaintiffs allege the type of conduct that antitrust law is intended to prevent. As expressed by the Supreme Court, agreements that establish minimum resale prices may lead to inefficient distribution of products and supracompetitive pricing of products passed on to the consumer. *Leegin Creative Leather Prods., Inc.*, 551 U.S. at 893-94. In their complaint, Plaintiffs allege that Amazon's MMAs pressures suppliers to sell their products to Amazon's competitors at prices that incorporate the minimum margin guarantee, creating a de facto minimum resale price and restricting competition. Dkt. # 1 at 5, 12, 17. Plaintiffs' allegations suffice at this stage.

C.    Plaintiffs Allege Plausible Claims under Sections 1 and 2 of the Sherman Act

Amazon says that Plaintiffs' Section 1 rule of reason claim and Section 2 claim fail because the complaint does not plausibly allege (1) anticompetitive effects or (2) relevant markets. Dkt. # 18 at 24, 27.[3]

---

[3] Amazon also contends that Plaintiffs fail to state a Section 1 claim under the quick-look framework. Dkt. # 18 at 15. Whether quick-look or rule of reason is the applicable framework is an inquiry more appropriate for the summary judgment phase. *Frame-Wilson*, 591 F. Supp. 3d at 988 n.1 (citing *In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1122 (N.D. Cal. 2012)). But the Court "'must still determine whether the complaint has alleged sufficient facts'" to state a claim under rule of reason, quick-look, or per se. *Id.* (quoting *PBTM LLC v. Football Nw., LLC*, 511 F. Supp. 3d

1    Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust

2    or otherwise, or conspiracy, in restraint of trade or commerce among the several States."  15

3    U.S.C. § 1.  But courts have long recognized that Section 1 prohibits only "unreasonable

4    restraints" on trade or commerce.  *Leegin Creative Leather Prods., Inc.*, 551 U.S. at 885 (quoting

5    *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997)).  An "unreasonable restraint" is either per se illegal

6    or deemed as such under the "rule of reason."  Because Plaintiffs have not alleged any per se

7    claims, this Court does not consider that standard.  Thus, to state a Section 1 claim here,

8    Plaintiffs must allege (1) that an agreement exists, (2) that the agreement imposed an

9    unreasonable restraint on trade (i.e., had an anticompetitive effect) under a rule of reason

10   analysis, (3) within the relevant market, and (4) that the restraint affected interstate commerce.

11   *See Am. Ad. Mgmt., Inc. v. GTE Corp.*, 92 F.3d 781, 784 (9th Cir. 1996); *Copperweld Corp. v.*

12   *Indep. Tube Corp.*, 467 U.S. 752, 767 (1984).[4]

13   Section 2 of the Sherman Act prohibits the monopolization, or attempted monopolization,

14   or combination or conspiracy to monopolize, of any part of trade or commerce among the states.

15   15 U.S.C. § 2.  A Section 2 claim requires Plaintiffs to show "(1) possession of monopoly power

16   in the relevant market and (2) willful acquisition or maintenance of that power as distinguished

17   from growth or development as a consequence of a superior product, business acumen, or

18   historic accident."  *United States v. Grinnell Corp*, 384 U.S. 563, 570-71 (1966).  Monopoly

19   power is not unlawful "unless it is accompanied by an element of anticompetitive conduct."

20   *Qualcomm Inc.*, 969 F.3d at 990 (citing *Verizon Commc'ns Inc. v. L. Offs. Of Curtis V. Trinko*,

21

22   _____

23   1158, 1178 (W.D. Wash. 2021)).  Because, as explained below in part III.C.2, Plaintiffs allege sufficient
     facts to state a Section 1 claim under the rule of reason, the Court need not determine at this point whether
     the rule of reason or quick-look is the proper framework.  *See Id.*

24        [4] Amazon does not dispute that Plaintiffs allege that (1) an agreement exists; and (2) the alleged
     restraint affects interstate commerce.

ORDER RE: DEFENDANT'S MOTION TO DISMISS - 11

*LLP*, 540 U.S. 398, 407 (2004)).  Therefore, Plaintiffs must show "anticompetitive abuse or leverage of monopoly power, or a predatory or exclusionary means of attempting to monopolize the relevant market."  *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 990 (9th Cir. 2020) (citations omitted).  A monopolist's act is viewed as exclusionary if it has an "anticompetitive effect," meaning, that it harms "the competitive *process* and thereby harm[s] consumers."  *Qualcomm Inc.*, 969 F.3d at 990 (citations omitted).

   1.   Plaintiffs allege plausible relevant markets

   Section 1 and Section 2 claims require a plaintiff to "allege that the defendant has market power within a 'relevant market.'"  *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1044 (9th Cir. 2008).  But because the "validity of the 'relevant market' is typically a factual element rather than a legal element," an antitrust complaint "survives a Rule 12(b)(6) motion unless it is apparent from the face of the complaint that the alleged market suffers a fatal legal defect."  *Id.* For a relevant market to be facially sustainable, it must be a product market[5] that encompasses the product (or products) at issue as well as all economic substitutes for the product.  *Id.* at 1045. It must include "the group or groups of sellers or producers who have actual or potential ability to deprive each other of significant levels of business."  *Id.*  (quoting *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989)).

   Plaintiffs allege the relevant market is the two-sided Online Retail Marketplace Market. Dkt. # 1 at 28.  Alternatively, they allege the relevant market is the Online Retail Sales Market and Product Submarkets.  *Id.* at 43-44.   Plaintiffs allege relevant markets as to both.

---

   [5] A "relevant market" is defined by geography and product.  *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001).  Amazon does not challenge the geographic market, so this Court addresses only the product market.  *See also Frame-Wilson*, 591 F. Supp. 3d at 989 n.2.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

First, a two-sided market exists when a platform "offers different products or services to two different groups who both depend on the platform to intermediate between them." *Am. Express Co.*, 138 S. Ct. at 2280.  Plaintiffs allege that the two-sided Online Retail Sales Market Place is "comprised of online platforms that allow consumers to purchase retail products listed by multiple independent sellers without having to leave the platform." Dkt. # 1 at 29.  Plaintiffs delineate the two-sided Online Retail Marketplace Market by describing features such as expansive inventory, payment services, individualized product offerings, and geographic and temporal accessibility.  *Id.* at 32 -33.  Plaintiffs also highlight the beneficial features of an online market from the retailer's perspective including reaching wider audiences, reduced transaction costs, and a shortened supply chain.  *Id.* at 33.  Moreover, Plaintiffs allege that the Online Retail Marketplace Market necessarily excludes "brick-and-mortar" retailers; single-merchant online sites; and social media, comparison shopping sites, and promotional sites.  *Id.* at 30-37.

Plaintiffs also allege facts to demonstrate that the Online Retail Sales Market and Product Submarkets are legally sufficient.  A plaintiff may premise antitrust allegations on a submarket. *Newcal Indus., Inc.*, 513 F.3d at 1045 (citing *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)).  To establish a legally cognizable submarket, "the plaintiff must be able to show (but need not necessarily establish in the complaint) that the alleged submarket is economically distinct from the general product market."  *Id.*  The Supreme Court has identified several "practical indicia" that a submarket is economically distinct: "industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors."  *Brown Shoe Co.*, 370 U.S. at 325.  These indicia are not to be seen "as a litmus test" and courts have held that submarkets can exists even when only some factors are

present.  *Bon-Ton Stores, Inc. v. May Dep't Stores Co.*, 881 F. Supp. 860, 868 (W.D.N.Y. 1994); *see also Frame-Wilson*, 591 F. Supp. 3d at 989.

Plaintiffs allege "practical indicia" that the alleged Online Retail Sales Market and Product Submarkets are legally sufficient.  Plaintiffs allege that the Online Retail Sales Market is recognized as a distinct market by government agencies.  Dkt. # 1 at 31, 46.  They also allege that the Federal Trade Commission and the U.S. Department of Commerce distinguishes between online retail sales and physical retail sales.  *Id.* at 31.  Plaintiffs also allege differences between physical and online retail stores including different prices, purchasing environments, and geographic and temporal limitations for consumers.  *Id.* at 31-34.  Finally, Plaintiffs allege that "Amazon has minimally obtained monopoly power in the product category submarkets with U.S. online retail markets, where its market share exceeds 50%."  *Id.* at 46-47.  Plaintiffs allege that Amazon has substantial market power in at least 18 categories.  *Id.* at 46-47.

Amazon contends that the alleged relevant online markets are both under- and over-inclusive.  Dkt. # 18 at 28-29.  It says that the alleged markets are underinclusive because they exclude online single-seller and brick-and-mortar retailers that purchase from the same suppliers.  *Id.*  Amazon also contends that the Online Retail Marketplace market is overinclusive because it consists of products that are not reasonable substitutes for one another.  *Id.* at 29.  But Plaintiffs sufficiently allege facts to illustrate the difference between online retail markets and physical sellers and online retail markets and online single-sellers, even though the same products may be available in both markets.  Dkt. # 1 at 30-37; *F.T.C. v. Whole Foods Mkt., Inc.*, 548 F.3d 1028, 1040 (D.C. Cir. 2008) (a product market comprising premium natural and organic supermarkets may constitute a submarket distinct from conventional supermarkets even if the two markets had overlapping products); *see also Frame-Wilson*, 591 F. Supp. 3d at 990 (holding the alleged

ORDER RE: DEFENDANT'S MOTION TO DISMISS - 14

ecommerce retail market was not over- or under-inclusive); *see also Floyd v. Amazon.com, Inc.*, No. C22-1599-JCC, 2023 WL 3891973, at *5 (W.D. Wash June 8, 2023) (holding alleged two-sided U.S. Online Marketplace and identified submarkets were not under- or over-inclusive).

Plaintiffs thus allege legally sufficient relevant markets in the two-sided Online Retail Marketplace Market as well as the Online Retail Sales Market and Product Submarkets. *See Frame-Wilson*, 591 F. Supp. 3d at 988-990 (holding the U.S. retail ecommerce market and U.S. ecommerce retail submarkets to be plausibly alleged); *see also Floyd*, 2023 WL 3891973, at *4-5 (holding the two-sided U.S. Online Marketplace and applicable submarkets to be plausibly alleged).

The Court does not see any fatal legal defect in the relevant markets as alleged. While Amazon disputes the facts as pleaded in Plaintiffs' complaint, "defining the relevant market is a factual inquiry ordinarily reserved for the jury." *GTE Corp.*, 92 F.3d at 790 (internal citations omitted).

2. Plaintiffs allege plausible anticompetitive effects

Amazon next contends that Plaintiffs do not plausibly allege anticompetitive effects necessary for Section 1 and Section 2 claims. Dkt. # 18 at 24-27. It claims that Plaintiffs do not plausibly allege that the MMAs cause supracompetitive prices or otherwise impair competition. *Id.* at 24 (citing *Qualcomm Inc.*, 969 F.3d at 990-91 ("anticompetitive effect—that is, [the conduct] must harm the competitive process and thereby harm consumers.").

As stated above, under a Section 1 rule of reason analysis, Plaintiffs must show the agreement imposed an unreasonable restraint on trade (i.e., had an anticompetitive effect). *GTE Corp.*, 92 F.3d at 784; *Copperweld Corp.*, 467 U.S. at 767. A plaintiff may show that a restraint

has anticompetitive effects in a relevant market through direct or indirect evidence. *Qualcomm Inc.*, 969 F.3d at 989 (citing *Am. Express Co.*, 138 S. Ct. at 2284). Direct evidence of anticompetitive effects includes "'proof of actual detrimental effects [on competition],' *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447 (1986), such as reduced output, increased prices, or decreased quality in the relevant market]." *Am. Express Co.*, 138 S. Ct. at 2284; *see also Qualcomm Inc.*, 969 F.3d at 989; *see also PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 834 (9th Cir. 2022). Indirect or circumstantial evidence of anticompetitive effects would include "proof of market power plus some evidence that the challenged restraint harms competition." *Qualcomm Inc.*, 969 F.3d at 989 (citation omitted); *see also Am. Express Co.*, 138 S. Ct. at 2284; *see also PLS.Com, LLC*, 32 F.4th at 834.

Under Section 2, a monopolist's act has an anticompetitive effect only when the act harms "the competitive *process* and thereby harm[s] consumers." *Qualcomm Inc.*, 969 F.3d at 990 (citation omitted).

Section 1 and Section 2 of the Sherman Act both involve a similar three-part burden-shifting test where the plaintiff has the initial burden of showing anticompetitive effect of the restraint or monopolist conduct. The burden then shifts to the defendant to provide a procompetitive justification for its conduct. Finally, the burden shifts back to the plaintiff to demonstrate that the "procompetitive efficiencies could be reasonably achieved through less anticompetitive means." *Qualcomm Inc.*, 969 F.3d at 990 (citations omitted). Because of this similarity, courts often review claims under both sections together; if a court finds that conduct is not anticompetitive under section one, it need not review it under section two. *Id.* But while a plaintiff may use indirect evidence to show anticompetitive effect of an alleged restraint under Section One, they may not rely on indirect evidence to show anticompetitive effect of an alleged

unlawful monopoly under Section Two.  *Id.*  Finally, to establish that conduct has an

anticompetitive effect in a two-sided market,

> the plaintiff must establish an anticompetitive impact on the 'market as a whole.'
> Sometimes this will be by alleging harm to participants on both sides of the market
> and sometimes it will not.  It is possible that a practice harming participants on one
> side of the market could outweigh the benefits to participants on the other, causing
> anticompetitive effects on the market as a whole.

*PLS.Com, LLC*, 32 F.4th at 839 (internal citations omitted).

Therefore, to show anticompetitive effects of an alleged restraint or alleged monopolist's

acts, a plaintiff must show diminished consumer choices and increased prices that "are the result

of a less competitive market due to either artificial restraints or predatory and exclusionary

conduct."  *Qualcomm Inc.*, 969 F.3d at 990.

Plaintiffs allege that Amazon's MMAs result in consumers paying supracompetitive

prices for products purchased on Amazon's online retail markets.  Dkt. # 1 at 4-9, 16-17, 38.

They allege that Amazon's MMAs "guarantee both that Amazon will be able to price the

supplier's product competitively against other online competition at least 95% of the time *and*

that Amazon will receive a minimum margin on each sale regardless of the actual price that

Amazon sells the product at retail."  *Id.* at 5.  These agreements could—and Plaintiffs allege,

do—raise the cost of products on competing retailors who purchase from suppliers subject to the

MMAs.  *Id.* at 5-6.  As a result, Plaintiffs allege, the minimum price for a given product is

inflated by the MMAs.  *Id.*  Plaintiffs also allege how Amazon's MMAs—the alleged artificial

restraint—and its abuse of monopoly power decrease the competition in the market leading to

diminished consumer choices.  *See Id.* at 19-28 (detailing how Amazon's MMAs reduce

competition on Amazon Marketplace by "prevent[ing] more innovative online shopping

marketplaces from competing in the United States" through manipulation of "online prices

through MMAs," creating "barriers to competition with other existing or potential online marketplace operators."); *Id.* at 45-46 (detailing how Amazon's online retail marketplace failed in China because of consumer's access to "innovative options for online shopping," which is lacking in the U.S. online retail marketplace market).

Amazon raises two other issues with Plaintiffs' allegations of supracompetitive effects. First, it claims Plaintiffs fail to "identify any product that Amazon or another retailer sold at a supracompetitive price" or that Plaintiffs "purchased a product subject to a Margin Agreement." Dkt. # 18 at 24.  Second, it says that Plaintiffs' theory of market-wide anticompetitive effects fails because its rests on the combined effects of individual Margin Agreements and the Court may not evaluate the alleged effects of the MMAs in the aggregate.  *Id.* at 25-26.  Neither of these arguments persuade the Court.

First, a complaint "need not identify specific products that fall into the Relevant Product Markets to survive a motion to dismiss."  *Arista Networks Inc. v. Cisco Sys., Inc.*, No. 16-cv-00923-BLF, 2017 WL 6102804, at *17 (N.D Cal. Oct. 10, 2017) (citing to *Iqbal*, 556 U.S. 662, which held that "Rule 8 does not require 'detailed factual allegations'").  The cases cited by Amazon, appearing for the first time in its reply, do not conflict with this point.  In *United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, the court granted defendant's motion to dismiss because the plaintiffs failed to corroborate their claims of supracompetitive prices in the complaint.  177 F. Supp. 3d 1183, 1193 (N.D. Cal. 2016).  In *Intel Corp. v. Fortress Inv. Grp. LLC*, the Ninth Circuit noted that the plaintiffs had not alleged "any instance in which it has in fact" paid higher prices because of the agreements in question. No. 21-16817 2022 WL 16756365, at *2 (9th Cir. Nov. 8, 2022).  And in *Spinelli v. Nat'l Football League*, the Second Circuit held that the plaintiffs had cited no "examples, data, or other facts to support their

assertion" of an increase in aggregate cost to consumers as a result of defendants' conduct.  903 F.3d 185, 212 (2d Cir. 2018).  But here, as discussed, Plaintiffs have pointed to facts and data that indicate certain consumers are paying supracompetitive prices as a result of Amazon's MMAs.

Second, Amazon points to a Fourth Circuit case, *Dickson v. Microsoft Corp.*, 309 F.3d 193, 210 (4th Cir. 2002), and a Ninth Circuit case, *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, No. 98cv132 BTM, 2006 WL 8437393 (S.D. Cal. 2006), aff'd, 588 F.3d 659 (9th Cir. 2009), to support its claim that Plaintiffs may not aggregate the agreements to demonstrate the alleged anticompetitive effects.  Dkt. # 18 at 25-26.  But these cases do not support such a claim.  The Fourth Circuit held that because the complaint there "alleged discrete conspiracies between" [Defendant A and Defendant B] and [Defendant A and Defendant C], the court "could not consider the cumulative harm of" the discrete agreements.  *Dickson*, 309 F.3d at 210.  In *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, the district court dismissed a Section 1 complaint because the plaintiffs "failed to allege that the [challenged] agreements, when considered individually, would be capable of producing significant anticompetitive effects." 2006 WL 8437393, at *2.  On appeal, the Ninth Circuit addressed the reach of *Dickson* and held that "the district court erred in not allowing [Plaintiffs] to allege the cumulative effects of a single Defendant's exchange agreements."  *William O. Gilley Enterprises, Inc. v. Atl. Richfield Co.*, 561 F.3d 1004, 1010-12 (9th Cir. 2009), opinion withdrawn and superseded, 588 F.3d 659 (9th Cir. 2009) ("*Gilley I*") (citing *Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.*, 676 F.2d 1291, 1303 (9th Cir. 1982), *Fortner Enters. v. U.S. Steel Corp.*, 394 U.S. 495 (1969)).  The Ninth Circuit held that when a complaint alleges discrete conspiracies, a court cannot consider the cumulative harm. *Orchard Supply Hardware LLC v. Home Depot USA*, 967 F.

Supp. 2d 1347, 1362 (N.D. Cal. 2013) (citing *Dickson*, 309 F.3d at 210).  But *Dickson* does not hold that aggregation is inappropriate if no discrete conspiracies are alleged.  *Id.  Gilley I* was later withdrawn and superseded by the Ninth Circuit, which held that plaintiff's claims were barred by res judicata.  *William O. Gilley Enterprises, Inc. v. Atl. Richfield Co.*, 588 F.3d 659 (9th Cir. 2009) (*"Gilley II"*).  This Court does not rely on withdrawn Ninth Circuit opinions as precedent (Ninth Circuit Rule 36-3(a) ("Unpublished dispositions and orders of this Court are not precedent[.]")).  But like the analysis in *Orchard Supply Hardware LLC v. Home Depot USA* found, the reasoning by the Ninth Circuit is persuasive.

Moreover, on-point and in-circuit decisions indicate that courts here "lean[] away from disallowing aggregation in pleading Section 1 claims."  *Orchard Supply Hardware LLC*, 967 F. Supp. 2d 1362; *see also Twin City Sportservice, Inc.*, 676 F.2d at 1303 ("Nothing in our prior opinion suggested that aggregation of [party's] contracts in the relevant market was prohibited[.] ... [I]t was proper for the district court to have aggregated [the] contracts in the relevant market in order to assess the Sherman Act violations resulting from these contracts."); *see also Fortner Enters.*, 394 U.S. at 502-503.  Therefore, the Court believes that Plaintiffs' aggregation of alleged anticompetitive effects caused by the MMAs is proper.

As stated above, plaintiffs may also allege indirect evidence of anticompetitive effects of a restraint by showing proof of *defendant's* market power in the relevant market. *Qualcomm Inc.*, 969 F.3d at 989 (emphasis added).  Plaintiffs here allege Amazon's market share of the Online Retail Marketplace Market to be as high as 90% of all U.S. online marketplace sales, Dkt. # 1 at 40, and that the company has minimally obtained monopoly power in certain specified product submarkets with a market share of 50% or more, Dkt. # 1 at 46-47.

1

2

The complaint states facts that, if taken as true, suffice to allege that the conduct at

issue—Amazon's MMAs—results in reduced consumer choices and an increase in prices of

3

products bought by consumers.  Plaintiffs have also sufficiently alleged Amazon's market power

4

within the relevant markets.  Therefore, the Court finds that Plaintiffs allege plausible

5

anticompetitive effects of MMAs sufficient to survive the motion to dismiss.

6

D.      California and Maryland State Law Antitrust Claims

7

8

In addition to federal antitrust claims under the Sherman Act, Plaintiffs assert violations

9

of (1) California's Cartwright Act, Cal. Bus. & Prof. Code § 16700, *et seq.* and (2) Maryland's

Antitrust Act, Md. Code. Ann., Com. Law § 11-201, *et seq.* Dkt. # 1 at 52-54.

10

11

The Cartwright Act codifies "the common law prohibition against restraint of trade" and

12

deems unlawful any "'combination of capital, skill or acts by two or more persons' for

13

enumerated purposes which restrains trade." *Kolling v. Dow Jones & Co.*, 137 Cal. App. 3d 709,

14

717 (Cal. Ct. App. 1982) (internal citations omitted); *see also* CAL. BUS. & PROF. CODE § 16700,

15

*et seq.*

16

Under Maryland's Antitrust Law,

17

18

19

[a] person may not: (1) by contract, combination, or conspiracy with one or more
other persons, unreasonably restrain trade or commerce; (2) monopolize, attempt
to monopolize, or combine or conspire with one or more other persons to
monopolize any part of the trade or commerce within the State, for the purpose of
excluding competition or of controlling, fixing, or maintaining prices in trade or
commerce[.]

20

MD. CODE ANN., COM. LAW § 11-204(a)(1), (2).

21

22

Amazon contends that the state law claims fail because (1) plaintiffs lack antitrust

23

standing; and (2) plaintiffs fail to allege any agreement to fix prices as required for both the

24

Cartwright Act and Maryland's Antitrust Law.  Dkt. # 18 at 30-31.

ORDER RE: DEFENDANT'S MOTION TO DISMISS - 21

1

2          1.       Plaintiffs have adequately pleaded antitrust standing

3          Maryland antitrust law requires (1) that the plaintiff's injuries be proximately caused by

4   allegedly unlawful conduct and (2) plaintiffs allege antitrust injury.  *Seafarers Welfare Plan v.*

5   *Philip Morris*, 27 F. Supp. 2d 623, 633-34 (1998).  These requirements mirror the federal

6   antitrust standing requirements of proximity and antitrust injury.  Specifically, "absent some

7   direct relation between the injury asserted and the allegedly unlawful conduct, the requirements

8   of proximate cause are not satisfied."  *Id.* at 633 (citing *Associated Gen. Contractors of Cal.,*

9   *Inc.*, 459 U.S. at 540–41).  Moreover, a plaintiff must allege an "'injury of the type [that] the

10  antitrust laws were intended to prevent and that flows from that which makes the defendants'

11  acts unlawful.  The injury should reflect anticompetitive effect either of the violation or of

12  anticompetitive acts made possible by the violation.'"  *Seafarers Welfare Plan*, 27 F. Supp. at

13  634 (citing *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477 (1977)).

14         Similarly, California's Cartwright Act requires that plaintiff's injuries were proximately

15  caused by the alleged antitrust violation.  *Song Fi, Inc. v. Google, Inc.*, No. C 14-5080 CW, 2016

16  WL 1298999, at *7 (N.D. Cal., Apr. 4, 2016); *see also Kolling*, 137 Cal. App. at 723 ("The

17  plaintiff in a Cartwright Act proceeding must show that an antitrust violation was the proximate

18  cause of his injuries.").  Additionally, "[a]n 'antitrust injury' must be proved; that is, the type of

19  injury the antitrust laws were intended to prevent, and which flows from the invidious conduct

20  which renders defendants' acts unlawful."  *Id.* (citing *Brunswick Corp.*, 429 U.S. at 487-489).

21         Per the analysis above in part III.A., Plaintiffs have adequately pleaded antitrust injury

22  and direct injury and, as a result, have antitrust standing.

23         2.       Plaintiffs allege a plausible agreement to fix prices

24

Amazon finally contends that Plaintiffs have failed "to allege any agreement to fix prices." Dkt. # 18 at 31. Amazon says Plaintiffs challenge conduct that cannot give rise to antitrust liability, *Id.* at 18-22, that Plaintiffs fail to state a Section 1 Sherman Act claim under the quick-look framework, *Id.* at 22-24, and that the state law claims fail for the same reason.

Under both Maryland Antitrust Law and the Cartwright Act, an agreement that establishes a minimum resale price is considered a restraint of trade and, therefore, a per se violation of the applicable state law. *See* MD. CODE ANN., COM. LAW § 11-204(b) ("For purposes of subsection (a)(1) of this section, a contract, combination, or conspiracy that establishes a minimum price below which a retailer, wholesaler, or distributor may not sell a commodity or service is an unreasonable restraint of trade or commerce."); *Kolling*, 137 Cal. App. at 721 (internal citations omitted) (holding price fixing is illegal per se under California Law, "so that *any* combination which tampers with price structures constitutes an unlawful activity.").

The Cartwright Act is modeled after the Sherman Act such that a court's analysis "mirrors the analysis under federal law." *Orchard Supply Hardware LLC*, 967 F. Supp. 2d at (internal quotations and citation omitted) (finding that because the court had determined Plaintiff had a viable rule of reason claim under section 1 of the Sherman Act, Plaintiff had stated sufficient facts to establish a viable Cartwright Act against the same Defendant); *see also Kolling*, 137 Cal. App. at 717 ("The Cartwright Act is patterned after the federal Sherman Anti-Trust Act (15 U.S.C., § 1 et seq.), so that decisions under the latter act are applicable to the former."). Similarly, Maryland's Antitrust Act "is essentially the same as § 1 of the Sherman Antitrust Act[.]" *Krause Marine Towing Corp. v. Ass'n of Md. Pilots*, 205 Md.App.194 (Md. Ct. Spec. App., 2012) (internal citations and quotations omitted).

As determined above, Plaintiffs assert facts that, if taken as true, demonstrate the type of conduct antitrust law intends to prevent.  Plaintiffs allege that Amazon's MMAs pressure suppliers to sell their products to Amazon's competitors at prices that incorporate the minimum margin guarantee, creating a de facto minimum resale price and restricting competition.  Dkt. # 1 at 5, 12, 17.

Moreover, as explained above, the Court need not determine at this stage whether quick-look or rule of reason is the applicable framework.  *See supra,* n. 2.  Because Plaintiffs allege sufficient facts to state a Section 1 claim under the rule of reason, the Court need not determine at this juncture whether the rule of reason or quick-look is the proper framework.  *See Frame-Wilson*, 591 F. Supp. 3d at 988 n.1.

## IV

### CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss (Dkt. # 18).[6]

Dated this 7th day of September, 2023.

John H. Chun
United States District Judge

---

[6] In their surreply, Plaintiffs move to strike *The Yellow Cab* complaint in Amazon's reply and to submit the full chapter of a secondary source Defendant quoted in its reply.  Dkt. # 40 at 2.  Because the Court relies on neither *The Yellow Cab* complaint nor any of the secondary source, it need not rule on the request to strike.