UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISTOPHER BROWN, *et al.*, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

AMAZON.COM, INC., a Delaware corporation,

Defendant.

Case No. 2:22-cv-00965-JHC

ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION

Plaintiffs Christopher Brown, Scott Graeber, Laura Loes, Leticia Shaw, and David Atwood and Defendant Amazon.com, Inc. jointly stipulate and agree to the entry of an order regarding discovery of electronically stored information ("ESI") and to abide to the following provisions regarding ESI in this matter:

**A. General Principles**

1. An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2. As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

**B. ESI Disclosures**

Within 45 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

1. Custodians. The custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control.

2. Non-custodial Data Sources. A list of non-custodial data sources (*e.g.*, shared drives, servers), if any, likely to contain discoverable ESI.

3. Third-Party Data Sources. A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4. Inaccessible Data. A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

5. Foreign data privacy laws. Nothing in this Order is intended to prevent either party from complying with the requirements of a foreign country's data privacy laws, *e.g.*, the European Union's General Data Protection Regulation (GDPR) (EU) 2016/679. The parties agree to meet and confer before including custodians or data sources subject to such laws in response to any ESI or other discovery request.

**C. ESI Discovery Procedures**

1. On-site inspection of electronic media. Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2. Search methodology. The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

a. Prior to running searches:

i. The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. The producing party may provide unique hit counts for each search query, including hit counts by custodian, provided that it can be done with minimal burden.

ii. The requesting party is entitled to, within 21 days of the producing party's disclosure of hit counts as described in Section 2(a)(i) above, add no more than 20 search terms or queries to those disclosed by the producing party absent a showing of good cause or

agreement of the parties. If any additional search term or query produces a disproportionate number of hits, the parties agree to meet and confer in good faith.

iii. The following provisions apply to search terms / queries of the requesting party. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query.

b. Upon a reasonable request, a party producing data will produce data dictionaries relevant for such data to the extent such dictionaries exist.

3. Format.

a. ESI will be produced to the requesting party with searchable text, in a format set forth in Appendix A.

b. Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, and drawing files, will be produced in native format.

c. Each document image file shall be named with a unique number (Bates Number). Documents produced in native format will be assigned a Bates Number and be produced with a corresponding load file. File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

        d. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

e. The full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

4. De-duplication. The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information removed during the de-duplication process tracked in a duplicate/other custodian field in the database load file. If processing and production is done on a rolling basis, an updated Duplicate Custodians field with additional values shall be provided in an overlay. The producing party shall identify whether the overlay replaces previously produced fields for a file or supplements them.

5. Email Threading. The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. Upon reasonable request, the producing party will produce a less inclusive copy or missing metadata, if, for example, a threaded email cuts off to/from/cc/subject line/date information.

6. Metadata fields. The parties agree to the metadata fields set forth in Appendix A.

7. Hard-Copy Documents. The parties agree to the production of hard copies in the manner set forth in Appendix A

**D. Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information

in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall take reasonable and proportional steps to preserve all discoverable ESI in their possession, custody, or control.

2. The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3. The Parties agree that only unique, non-duplicative sources of relevant Documents need to be preserved.

4. Absent a showing of good cause by the requesting party, the categories of ESI that need not be preserved include but are not limited to:

a. Deleted, slack, fragmented, or other data only accessible by forensics.

b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

d. Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

e. Interim automatically saved drafts, as opposed to drafts saved by a user.

f. Dynamic fields of databases or log files that are not retained in the usual course of business.

g. Back-up data that are duplicative of data that are more accessible elsewhere.

h. Server, system or network logs.

i. Data remaining from systems no longer in use that is unintelligible on the systems in use.

   j. Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**E. Privilege**

  1. A producing party shall create a privilege log of all documents or categories thereof fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. Privilege logs will be produced to all other parties no later than 45 days after delivering a production unless an earlier deadline is agreed to by the parties. The parties agree to extend the deadline to 55 days for privilege logs created in connection with productions originally produced in *People of the State of California v. Amazon.com, Inc.*, Case No. CGC-22-601826 (Calif. Super. Ct.).

  2. Redactions need not be logged so long as the basis for the redaction is clear on the face of the redacted document.

  3. With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

  4. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

  5. Pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege

or protection recognized by law. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection.

**F. Non-Party Discovery**

1. A Party that issues a non-party subpoena (the "Issuing Party") shall include a copy of this ESI Protocol with the subpoena.

2. The Issuing Party shall be responsible for producing any Documents obtained under a subpoena to all other Parties.

3. If the Non-Party production is not Bates-stamped, the Issuing Party shall endorse the Non-Party production with unique prefixes and Bates numbers prior to producing them to all other Parties.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

DATED: December 21, 2023

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: *__/s/ Steve W. Berman__*
Steve W. Berman (WSBA No. 12536)
By: *__/s/ Barbara A. Mahoney__*
Barbara A. Mahoney (WSBA No. 31845)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
barbaram@hbsslaw.com

KELLER POSTMAN LLC

Zina G. Bash (*pro hac vice*)
111 Congress Avenue, Suite 500
Austin, TX, 78701
(512) 690-0990
zina.bash@kellerpostman.com

Jessica Beringer (*pro hac vice*)
Shane Kelly (*pro hac vice*)
150 N. Riverside Plaza, Suite 4100
Chicago, Illinois 60606
(312) 741-5220
jessica.beringer@kellerpostman.com
shane.kelly@kellerpostman.com

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Alicia Cobb*
Alicia Cobb, WSBA # 48685
1109 First Avenue, Suite 210
Seattle, WA 98101
Telephone: (206) 905-7000
Email: aliciacobb@quinnemanuel.com

Steig D. Olson (pro hac vice)
David D. LeRay (pro hac vice)
Nic V. Siebert (pro hac vice)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Email: steigolson@quinnemanuel.com

Adam B. Wolfson (pro hac vice)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Email: adamwolfson@quinnemanuel.com

*Attorneys for Plaintiffs and proposed Class*

DAVIS WRIGHT TREMAINE LLP

By: */s/ John A. Goldmark*
John A. Goldmark, WSBA # 40980
MaryAnn Almeida, WSBA #49086
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Ph: (206) 622-3150; Fax: (206) 757-7700
E-mail: JohnGoldmark@dwt.com
E-mail: MaryAnnAlmeida@dwt.com

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Karen L. Dunn (pro hac vice)
William A. Isaacson (pro hac vice)
William B. Michael (pro hac vice)
Amy J. Mauser (pro hac vice)
Martha L. Goodman (pro hac vice)
Kyle Smith (pro hac vice)
2001 K Street, NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
E-mail: kdunn@paulweiss.com
E-mail: wisaacson@paulweiss.com
E-mail: wmichael@paulweiss.com
E-mail: amauser@paulweiss.com
E-mail: mgoodman@paulweiss.com
E-mail: ksmith@paulweiss.com

*Attorneys for Defendant Amazon.com, Inc.*

STIP. ORD. REGARDING DISCOVERY OF - 9
ELECTRONICALLY STORED INFORMATION
CASE NO. 2:22-CV-00965-JHC
010888-16/2329940 V1

**ORDER**

Based on the foregoing, IT IS SO ORDERED.

DATED this 21st day of December, 2023.

John H. Chun

The Honorable John H. Chun
UNITED STATES DISTRICT COURT JUDGE

# APPENDIX A

## PRODUCTION FORMAT PROTOCOL

## I. DEFINITIONS

**G. The following definitions and terms shall apply in this APPENDIX A:**

1. "Document" carries its broad meaning consistent with Fed. R. Civ. P. 34 and includes ESI and hard copy/paper material. A draft or non-identical copy is a separate Document within the meaning of this term.

2. "ESI" means electronically stored information, and carries a broad meaning consistent with Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001.

3. "Extracted Text" means the text extracted from a Native File, and includes all header, footer, and document body information.

4. "Load File" means a load utilization file, which is an electronic file containing information identifying a set of paper-scanned images or processed ESI, and containing: (i) an indication of which individual pages or files constitute each Document, including attachments, and links to the Static Images associated with each Document; (ii) links to any Native Files, where native files are being produced, including attachments, associated with each Document; and (iii) data relevant to each individual Document, including extracted and user-created Metadata and coded data.

5. "Metadata" means: (i) information associated with or embedded in a Native File that does not constitute the primary content region of the file; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

6. "Native File" or "Native Format" refers to ESI that is produced in the format in which it was maintained (e.g., an Excel document produced in .xls format would be produced in native format).

7. "OCR" means the optical character recognition file that is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents text searchable using appropriate software.

8. "Producing Party" means the party producing Documents in response to any request for production of documents pursuant to Fed. R. Civ. P. 34(a) or for any other reason.

9. "Receiving Party" means the party receiving a production of Documents in response to any request for production of document(s) pursuant to Fed. R. Civ. P. 34(a) or for any other reason.

10. "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard document review systems. Tagged Image File Format (TIFF) and Portable Document Format (PDF) images are examples of Static Images.

## II. OVERVIEW

**A. The production format has four main components.**

1. A directory containing images of every page of every Document in the production, Bates-numbered sequentially.

2. A directory containing Native Files for a subset of the Documents, each file named with the Bates number of the first page of the Document it represents and the confidentiality designation being used, with no additional text beyond this, and with the same extension as the original Native File type of the Document.

3. A directory containing OCR or Extracted Text files, one file per Document, each file named with the Bates number of the first page of the Document it represents with no additional text beyond this, followed by ".txt" suffix.

4. A Load File containing Bates ranges and Metadata for each Document.

## III. FORMAT FOR PRODUCTION

**A. Commencement of Production.**

The production of Documents shall proceed at such time, place, and in such sequence as allowed under the Federal Rules of Civil Procedure, as agreed to by the parties, or permitted by the Court.

**B. General Format of Production.**

Documents that are produced in these proceedings, whether originally stored in paper or electronic form, shall be produced in electronic image form, in the manner described in Section III.C., below, where reasonably feasible. Notwithstanding the foregoing provisions of this paragraph, the parties reserve the right to request that an alternative format or method of production be used for certain Documents, if such Documents are not susceptible to production in the format or methods of production addressed herein. In that event, the parties will meet and confer to discuss alternative production requirements, concerns, formats, or methods.

**C. Production Format.**

All documents shall be produced in the following formats when reasonably feasible:

1. Electronic Production of Paper Documents. Documents that are maintained in paper format shall be scanned as document level PDF files or black and white images at 300 x 300 dots per inch (DPI) or greater resolution, in single-page Group IV TIFF format, and shall reflect the full and complete information contained in the original Document. Hard copy Documents shall be produced with associated OCR files at the same time that the PDF or TIFF files are produced and with a Load File that includes at least the following Metadata fields: Begin Bates; End Bates; Begin Family; End Family; Pages; TextPath; Placeholder; File Extension; Custodian; All Custodians; Confidentiality; and Redacted, as those fields are described in Section IV, below. When subjecting physical documents to an OCR process, the settings of the OCR software shall maximize text quality over process speed. Any settings such as “auto-skewing” or “auto-rotation,” should be turned on when documents are run through the process. Paper Documents that contain fixed notes shall be scanned with the notes affixed, if it can be done so in a manner so as not to obstruct other content on the document. If the content of the Document is obscured by the affixed notes, the Document and notes shall be scanned separately.

2. Production of Electronically Stored Information (ESI). Unless otherwise specified, Document images shall be generated from electronic Documents in a set of document level PDF or single page Group IV TIFF images that reflect the full and complete information contained on the original Document. In the event a Document is redacted, the Producing Party shall withhold the redacted text for that Document. The failure to withhold such text for a redacted Document by a Producing Party shall not be deemed a waiver of the privilege associated with that Document.

3. File Structure. The Producing Party shall produce the following sets of files with each production.

   a. Load File.

      (1) Each production has one load file, in “Concordance” style .DAT format.

      (2) Values must be enclosed by þ (ASCII Decimal 254).

      (3) Values must be separated by the “Device Control 4” character, ASCII decimal 20.

      (4) First line must contain the column/field names (set forth in Section IV, below).

        (5) The fields Begin Bates and End Bates must be present, and the first fields listed in the load file.

(6) The field NativePath must be present if native files are included in the document production.

(7) Each subsequent row must contain the Metadata for one Document.

(8) Every row must have the same number of columns/fields (empty values are acceptable).

(9) Text must be encoded in UTF-8.

(10) File should be placed in the root directory or a directory labeled "DATA."

b. OCR and Extracted Text Files (.TXT Files).

(1) A single text file for each Document containing all the Document's pages, in text.

(2) Pages separated by form feed character (decimal 12, hex 0xC).

(3) Filenames should be of the form: <Bates num>.txt, where <Bates num> is the Bates number of the first page of the Document.

(4) Text must be encoded in UTF-8.

(5) Files should be placed in a directory labeled "TEXT."

c. Image Files.

(1) Document level PDF or Single-page Group IV TIFF images for each Document, containing all images for that document.

(2) Filenames should be of the form: <Bates num>.<ext>, where <Bates num> is the BATES number of the first page of the document (i.e., the "Begin Bates" number), and <ext> is the appropriate extension for the image format (.pdf or .tiff).

(3) Files should be placed in the "IMAGES" subdirectory.

4. Illegible Documents. Documents that cannot be read because of imaging or formatting problems, or because they are password-protected, shall be promptly identified by the Receiving Party. The Producing Party and the Receiving Party shall meet and confer to attempt to resolve problem(s).

5. Native Format Documents. The parties recognize that it may be appropriate for certain Documents to be produced in Native Format, such as spreadsheets, engineering drawings, presentations or slides, and audio and video files. In all cases, unless there is no textual content, an OCR or Extracted Text file shall be produced along with the Native File. The Receiving Party may request that the Producing Party produce additional file types of electronic Documents in Native Format where the converted image format distorts or causes the information to be improperly displayed, or for which there is no visual representation, such as audio files. Prior to producing any confidential information as defined in any applicable Protective Order entered herein in Native Format, the Producing Party and the Receiving Party shall meet and confer to establish additional procedures, to the extent necessary, for the protection of information contained in Native Files.

a. Excel and Access Databases. To the extent that responsive documents exist in Excel or another database program, documents shall be produced in Native Format unless the document needs to be redacted. To the extent that the document format constitutes a database created or maintained in Access or another software program, Documents shall be produced in their Native Format, where reasonably feasible. If a database is based upon proprietary software, the parties shall meet and confer regarding the format of production, which shall be a reasonably feasible format, to enable review by the Receiving Party. An image placeholder shall be provided for each document produced in Native Format. Each placeholder shall contain the phrase "DOCUMENT PRODUCED IN NATIVE FORMAT," or something similar, and shall contain the Bates number corresponding to the native file.

b. PowerPoint Presentations (PPT). PPT presentations should be produced in Native Format (*e.g.*, as .PPT files). PPT presentations shall also be produced in full document PDF or single-page TIFF format, along with speaker notes. The linked native file name should also match the Begin Bates field with the appropriate file extension. Any hidden slides or speakers notes should be included in PPT presentations.

c. Audio and Video Data. Parties should make best efforts to ensure care is taken for collection and production of any responsive audio and/or video data, and to preserve any Metadata that may be associated with those items. These data types may be stored in audio or video recordings, voicemail text messaging, and related/similar technologies.

d. Word Documents (or similar). Microsoft Word documents (.DOC, .DOCX, or substantially similar non-Microsoft file formats) should be produced in full document PDF or single-page TIFF format for each Document, containing all images for that document, and should be imaged in a manner that captures tracked changes and comments. To the extent a Receiving Party believes the converted image format distorts, omits, or causes information to be improperly displayed, the Receiving Party may

        request the Document in Native Format and the Producing Party shall meet and confer to attempt to resolve the problem(s).

e. To the extent the Producing Party produces a Document in Native Format, the following specifications apply:

(1) Filenames must be unique in the production, unless the content is identical. Files should be named for the starting Bates number of the associated Document.

(2) The filename must retain the file extension corresponding to the original Native Format (*e.g.*, an Excel 2003 spreadsheet's extension must be .xls).

6. Color. For any non-native documents, production will be in color where color is material to the understanding of the document or parts thereof (e.g., pie and bar charts) or documents that need to be produced in color can be produced in native format. Otherwise, non-native document images may be produced in black and white.

7. Production Media. A Producing Party may produce Documents electronically (via secure FTP, for example), or on an external hard drive, DVD, CD-ROM, or such other readily accessible computer or electronic media as the Producing Party and the Receiving Party may hereafter agree upon (the "Production Media"). Production Media should be labeled on its face with the production date, the production volume, the Bates range contained on the Production Media, and any confidentiality notation that may be required by the Protective Order entered in this case. Where not practicable to label Production Media on its face, a letter or email with the required information should be provided. If the Producing Party encrypts or "locks" the production, the Producing Party shall include, under separate cover, instructions regarding how to decrypt the files, and any necessary passwords.

8. Document Unitization. When scanning paper documents into Document images as described in Section III.C.1., they shall be unitized in a manner so as to maintain the Document(s) and any attachments as they existed in their original state, as reasonably feasible. Any applicable folder structure information should also be provided. Responsive attachments to e-mails stored shall be produced contemporaneously and sequentially immediately after the parent e-mail.

9. Duplicates. A Producing Party who has more than one identical copy of an electronic Document (i.e., the Documents are actual duplicates) need only produce a single copy of that Document. For avoidance of doubt, a Producing Party may de-duplicate actual duplicate documents across custodians, but all custodians should be identified in the All Custodians field.

10. Bates Numbering. Each Producing Party shall Bates number its production(s) as follows:

a. Each Bates number should consist of a unique identifier consisting of a prefix, followed by nine numbers (*e.g.*, ABC000000001). The prefix should be substantially similar for all pages produced by the same Producing Party throughout this litigation. Each page of a Document must have its own Bates number, and Bates numbers should be sequential.

b. Document Images. Each page of a produced Document shall have a legible, unique page identifier (Bates number) electronically "burned" onto the image at a location that does not unreasonably obliterate, conceal, or interfere with any information from the source Document. No other legend or stamp should be placed on the document other than a confidentiality designation (where applicable), a privilege designation, or a redaction notification (where applicable). For confidential documents the confidentiality designation shall be "burned" onto each Document's image at a location that does not unreasonably obliterate or obscure any information from the source Document.

c. Native Format Documents. In order to preserve the integrity of any Native Format Documents that will be produced, no Bates number, confidentiality legend or redaction information should be added to the content of the Native Format Document. Each native should have an individual Bates number assigned.

If documents cannot be rendered to a readable PDF or TIFF format, and the document needs to be redacted for personally identifiable information or privileged content, the native documents may be redacted by creating a new copy of the native document and inserting "Redacted" or similar language where the protected content is located. In that circumstance, a pristine copy of the original native file will be kept and the party will identify documents redacted in native format in the production cover letter and in the Redacted metadata field.

## IV. METADATA FIELDS

**A. For scanned hard copy documents, the Producing Party will provide the Metadata fields below.**

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Begin Bates | The production Bates number associated with the first page of a Document. |
| End Bates | The production Bates number associated with the last page of a Document. |
| BeginFamily | Begin Bates number of first page of the parent Document of family of attachments. |

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| EndFamily | End Bates number of the last page of last attachment to a family of Documents. |
| Pages | Total number of pages in the Document. |
| TextPath | Link to text file for the document. |
| Placeholder | Identifies a Document has a placeholder image due to technical difficulties with production. The Parties will negotiate alternative production, or otherwise make available for physical inspection, should one be requested by any of the Parties. If a placeholder image is included for privilege reasons, the Producing Party must appropriately identify which ports of the hard copy document have been withheld for privilege. |
| File Extension | The extension of the file. |
| Custodian | Identification of the custodian(s) from whom the file was sourced. |
| All Custodians | Identification of all custodians of the document. |
| Confidentiality | Confidentiality designation. |
| Redacted | (Y/N) field that identifies whether the document is redacted. |
| Production Volume | Production volume number (*e.g.*, VOL001, VOL002, etc.). |
| Producing Party | Name of party producing the Document. |

**B. For ESI and documents that were originally stored in electronic format, all fields below should be provided, to the extent reasonably feasible. Unless otherwise agreed by the parties, the field-naming conventions shall be as stated below, and shall be consistently applied across all productions:**

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Begin Bates | The production Bates number associated with the first page of a Document. |
| End Bates | The production Bates number associated with the last page of a Document. |
| BeginFamily | Begin Bates number of the first page of parent Document of family of attachments. |
| EndFamily | End Bates number of the last page of last attachment to a family of Documents. |
| AttachCount | Number of document attachments. |
| AttachNames | Native file names of each individual attachment, separated by semicolons. |
| Custodian | Identification of the custodian(s) from whom the file was sourced. |
| All Custodians | Identification of all custodians who the producing party agreed to produce and where a duplicate of the Document was de-duplicated when processing the documents. |
| File Path | The file path from which the document was collected |
| All Paths | Identification of all file paths for duplicate copies. |

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Author | Author field extracted from the Metadata of a Document or other creator identified for the Document. |
| From | From field extracted from the Metadata of an email message. |
| To | To field extracted from the Metadata of an email message. |
| Cc | Cc field extracted from the Metadata of an email message. |
| Bcc | Bcc field extracted from the Metadata of an email message. |
| Pages | Total number of pages in the Document. |
| Date Received | Datetime received (MM/DD/YYYY HH/MM/SS). |
| Date Sent | Datetime sent (MM/DD/YYYY HH/MM/SS). |
| Date Created | Datetime created (MM/DD/YYYY HH/MM/SS). |
| Date Modified | Datetime that a Document was last modified (MM/DD/YYYY HH/MM/SS). |
| Last Modified By | Identification of person(s) who last modified a Document. |
| Message Id | Unique Message Id. |
| In Reply To | Message ID of email that instant email is in reply to. |
| Title | Title field value extracted from the Metadata of the Native File. |
| Subject | Subject line extracted from an email, e-document or e-attachment. |
| Filename | The full name of the Native File. |
| File Extension | The extension of the file. |
| File Size | The size of the file in bytes. |
| MD5 Hash | The MD5 hash value of a Document. |
| Document Type | Document type. |
| Application | Name of the application used to open the file. |
| NativePath | The relative path to the native file for this Document. |
| TextPath | The relative path to the text file for this Document. |
| Redacted | Whether a Document has redactions (Y/N). |
| Placeholder | Whether a Document has a placeholder image (Y/N). |
| Confidentiality | Level of Confidentiality assigned. |
| Track Changes | Document has track changes (Y/N). |
| Hidden Content | Identifies documents with hidden content (*i.e.*, hidden rows, columns, sheets, or slides). |
| Speaker Notes | Document has speaker notes (Y/N). |
| Has Comments | Indicates there are comments in the document. |
| Production Volume | Production volume number (*e.g.*, V001, V002, etc.). |
| Producing Party | Name of party producing the Document. |